William M. Hogg (SBN 338196)
Michael A. Josephson*
Andrew W. Dunlap*
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 352-1100
Fax: (713) 352-3300
whogg@mybackwages.com
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Tel: (713) 877-8788
rburch@brucknerburch.com

\* - *Pro hac vice* forthcoming

*Counsel for Plaintiff, Class, and Collective Members*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CECIL JOHNSTON**, Individually and for Others Similarly Situated,<br><br>       Plaintiff,<br><br>v.<br><br>**MACPHERSON OIL COMPANY LLC**, a California limited liability company,<br><br>       Defendant. | Case No. _____<br><br>**ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT FOR VIOLATIONS OF:**<br><br>(1)  Fair Labor Standards Act (29 U.S.C. § 216(b));<br>(2)  Failure to Pay Overtime (Cal. Lab. Code § 510);<br>(3)  Failure to Authorize and Permit and/or Make Available Meal and Rest Periods (Cal. Lab. Code §§ 226.7 and 512);<br>(4)  Failure to Provide Timely and Accurate Itemized Wage Statements (Cal. Lab. Code § 226);<br>(5)  Waiting Time Penalties (Cal. Lab. Code §§ 201-203); and<br>(6)  Unlawful Business Practices (Cal. Bus. & Prof. Code §§ 17200 *et seq.*).<br><br>**DEMAND FOR JURY TRIAL** |

**SUMMARY**

1. Cecil Johnston ("Johnston") brings this class and collective action to recover unpaid wages and other damages from Macpherson Oil Company LLC ("Macpherson").

2. Johnston worked for Macpherson as a Drilling Consultant[1] in and around Bakersfield, Kern County, California.

3. Like the Day Rate Workers (as defined below), Johnston regularly worked more than 8 hours in a day and 40 hours in a week.

4. In fact, Johnston and the Day Rate Workers typically worked for 16+ hours a day for 7 days a week.

5. But Macpherson never paid them overtime (or double time) wages.

6. Instead of paying overtime (and double time) wages, Macpherson misclassified Johnston and the Day Rate Workers as independent contractors and paid them a flat amount for each day worked (a "day rate") with no overtime pay for the hours they worked in excess of 8 hours in a workday or 40 hours in a workweek, as well as no double time pay for the hours they worked in excess of 12 hours in a workday or in excess of 8 hours on their seventh consecutive workday.

7. Macpherson's uniform day rate pay scheme violates the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") by depriving Johnston and the Day Rate Workers of overtime wages at 1.5 times their regular rates of pay for all hours worked in excess of 40 hours in a workweek. *See* 29 U.S.C. § 207.

8. Macpherson's day rate pay scheme also violates various provisions of the California Labor Code and applicable Industrial Welfare Commission ("IWC") Wage Orders by depriving Johnston and the Day Rate Workers of overtime wages at 1.5 times their regular rates of pay for all hours worked in excess of 8 hours in a day and 40 hours in a workweek, as well as double time wages for all hours worked in excess of 12 hours in a workday and in excess of 8 hours on their seventh consecutive workday. *See* CAL. LAB. CODE § 510; IWC Wage Order No. 16-2001(3)(A)(1).

---

[1] In the oil and gas industry, Drilling Consultants are also referred to as Drill Site Managers, Well Site Supervisors, Company Men, Drill Safety Managers, Company Representatives, etc.

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT AND JURY DEMAND
*Johnston, et al. v. Macpherson Oil Company LLC*

9.      Further, in addition to failing to pay Johnston and the Day Rate Workers premium overtime (and double time) wages, Macpherson also uniformly failed to provide these Drilling Consultants with compliant meal and rest periods.

10.     Instead, Macpherson uniformly required Johnston and the Day Rate Workers to remain on-duty and to perform compensable work throughout their shifts and failed to provide them with *bona fide*, timely, and compliant meal and rest periods.

11.     Macpherson's failure to provide Johnston and the Day Rate Workers with *bona fide* meal and rest periods violates the meal and rest period provisions of the California Labor Code and applicable IWC Wage Orders. *See* CAL. LAB. CODE §§ 226.7 and 512; IWC Wage Order No. 16.

12.     Despite depriving Johnston and the Day Rate Workers of their required meal and rest periods, Macpherson uniformly failed to pay these Drilling Consultants the required one hour of premium pay (at their regular rates of pay) for each day Macpherson denied these Drilling Consultants an off-duty meal or rest period in violation of California law. *See* CAL. LAB. CODE § 226.7(c); IWC Wage Order No. 16.

13.     Likewise, Macpherson's illegal day rate pay scheme and meal/rest period practices violate the accurate wage statement provisions of the California Labor Code and applicable IWC Wage Orders by depriving Johnston and the Day Rate Workers of wage statements that accurately reflect (1) all hours actually worked, (2) all wages actually earned, and (3) premium pay for missed meal and rest periods. *See* CAL. LAB. CODE § 226; IWC Wage Order No. 16-2001(7).

14.     Further, Macpherson's illegal day rate pay scheme and meal/rest period practices violate the waiting time provisions of the California Labor Code and applicable IWC Wage Orders by depriving Johnston and the Day Rate Workers that have left their employment with Macpherson of all wages earned upon separation. *See* CAL. LAB. CODE §§ 201-203

15.     Finally, Macpherson's illegal employment practices violate California's Unfair Competition Law ("UCL") by practicing, employing, and utilizing the employment practices outlined above by knowingly denying Johnston and the Day Rate Workers: (1) overtime wages required by the FLSA and/or California law; (2) double time wages required by California law; (3) accurate itemized wage statements

1  required by California law; (4) compliant meal and rest periods and associated penalty pay; and (3) waiting
2  time penalties. *See* CAL. BUS. & PROF. CODE §§ 17200, *et seq.*

3  **JURISDICTION & VENUE**

4  16.  This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because
5  this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

6  17.  The Court also has supplemental jurisdiction over the state-law claims because these
7  claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

8  18.  This Court has general personal jurisdiction over Macpherson because Macpherson is a
9  domestic limited liability company that maintains its corporate headquarters and principal place of
10  business in Santa Monica, California and is registered to do business in the State of California.

11  19.  Venue is proper in this District pursuant to 28 U.S.C. § 1391. Macpherson employed
12  Johnston in this District and a substantial part of the events giving rise to Johnston's claims occurred
13  within this District.

14  **PARTIES**

15  20.  Johnston worked for Macpherson as a Drilling Consultant in and around Bakersfield,
16  California from approximately March 2013 through December 2021.

17  21.  Throughout his employment, Macpherson classified Johnston as an independent
18  contractor to avoid paying him overtime wages.

19  22.  Throughout his employment, Macpherson paid Johnston on a day rate basis with no daily
20  or weekly overtime (or double time) compensation.

21  23.  Throughout his employment, Macpherson failed to provide Johnston with compliant meal
22  and rest periods.

23  24.  Throughout his employment, Macpherson failed to pay Johnston the required one hour
24  of premium pay (at his regular rate) each day that Macpherson denied him a compliant meal and/or rest
25  period.

26  25.  Throughout his employment, Macpherson failed to provide Johnston with accurate,
27  itemized wage statements.

28

26.     Johnston's written consent is attached as **Exhibit 1**.

27.     Johnston brings this action on behalf of himself and other similarly situated Drilling Consultants who worked for, or on behalf of Macpherson, who were misclassified as independent contractors and paid a day rate with no overtime compensation.

28.     Macpherson uniformly misclassifies these Drilling Consultants as independent contractors to avoid paying them overtime wages.

29.     Macpherson uniformly pays these Drilling Consultants on a day rate basis.

30.     Macpherson uniformly pays these Drilling Consultants no overtime wages for the hours they work in excess of 8 hours in a day and/or 40 hours in a workweek.

31.     Macpherson uniformly pays these Drilling Consultants no double time wages for all hours worked in excess of 12 hours in a workday or in excess of 8 hours in a workday on their seventh consecutive workday.

32.     Macpherson uniformly fails to provide these Drilling Consultants with compliant meal and/or rest breaks.

33.     Macpherson uniformly fails to pay these Drilling Consultants the required one hour of premium pay (at their regular rates) each day that Macpherson denied them a compliant meal and/or rest period.

34.     Macpherson uniformly fails to provide these Drilling Consultants with accurate, itemized wage statements.

35.     The FLSA Collective of similarly situated employees is defined as:

> **All Drilling Consultants[2] who worked for, or on behalf of, Macpherson who were classified as independent contractors and paid a day rate with no overtime compensation at any time from July 7, 2020 through final resolution of this Action (the "FLSA Collective Members" or "FLSA Collective").**

36.     Johnston also seeks to represent a such a class under California law pursuant to FED. R. CIV. P. 23.

---

[2]     In the oil and gas industry, Drilling Consultants are also referred to as Drill Site Managers, Well Site Supervisors, Company Men, Drill Safety Managers, Company Representatives, etc.

37.     The California Class of similarly situated employees is defined as:

**All Drilling Consultants[3] who worked for, or on behalf of, Macpherson in California who were classified as independent contractors and paid a day rate with no overtime compensation at any time from July 7, 2019 through final resolution of this Action (the "California Class Members" or "California Class").**

38.     The FLSA Collective Members and the California Class Members are collectively referred to as the "Day Rate Workers" or "Putative Classes."

39.     Macpherson is a California limited liability company that maintains its headquarters and principal place of business in Santa Monica, California.

40.     Macpherson is registered to do business in California.

41.     Macpherson may be served with process by serving its registered agent: **Emelie Macpherson Smith, 100 Wilshire Boulevard, Suite 800, Santa Monica, California 90401**, or wherever she may be found.

### COVERAGE UNDER THE FLSA

42.     At all relevant times, Macpherson was an "employer" within the meaning of Section 3(d) of the FLSA. 29 U.S.C. § 203(d).

43.     At all relevant times, Macpherson was an "enterprise" within the meaning of Section 3(r) of the FLSA. 29 U.S.C. § 203(r).

44.     At all relevant times, Macpherson was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1) of the FLSA. 29 U.S.C. § 203(s)(1).

45.     At all relevant times, Macpherson has had an annual gross business volume of not less than $500,000 each year.

46.     At all relevant times, Macpherson has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or were produced for commerce, such as personal protective

---

[3]    In the oil and gas industry, Drilling Consultants are also referred to as Drill Site Managers, Well Site Supervisors, Company Men, Drill Safety Managers, Company Representatives, etc.

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT AND JURY DEMAND
*Johnston, et al. v. Macpherson Oil Company LLC*

1    equipment, computers, and cell phones.

2        47.    At all relevant times, Johnston and the Day Rate Workers were Macpherson's "employees"

3    within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

4        48.    At all relevant times, Johnston and the Day Rate Workers were engaged in commerce or

5    in the production of goods for commerce.

6        49.    Macpherson's misclassification of Johnston and the Day Rate Workers as independent

7    contractors does not alter their status as employees for purposes of the FLSA.

8        50.    Macpherson uniformly applied its policy of paying Drilling Consultants, including

9    Johnston and the Day Rate Workers, a day rate with no overtime compensation.

10       51.    Macpherson applied this policy regardless of any alleged individualized factors such as

11   precise job title, project, or geographic location.

12       52.    As a result of Macpherson's uniform day rate pay scheme, Johnston and the Day Rate

13   Workers do not receive overtime compensation when they work more than 40 hours in a workweek in

14   violation of the FLSA.

15       53.    Macpherson's uniform compensation scheme of paying Johnston and the Day Rate

16   Workers a day rate with no overtime compensation for weeks in which these workers work over 40

17   hours violates the FLSA. 29 U.S.C. § 207(a) & (e).

18                                    FACTUAL ALLEGATIONS

19       54.    Macpherson bills itself as "the 8th largest producer of onshore oil in California, with [its]

20   principal operations occurring in the Round Mountain oil field, with smaller operations in the

21   Sharktooth, Midway Sunset, and Mt. Poso oil fields[,]"[4] as well as non-California operations in the

22   Citronelle oil field in Alabama.[5]

23       55.    To complete its business objectives, Macpherson employs "approximately 150 full-time

24   employees and contractors in Bakersfield and Santa Monica[.]"[6]

25       56.    Specifically, to meet its business objectives, Macpherson hires Drilling Consultants,

26   ───────────────

27   [4]   https://macphersonenergy.com/about-us/ (last visited July 7, 2023).
     [5]   https://macphersonenergy.com/services/partnerships/ (last visited July 7, 2023).
     [6]   https://macphersonenergy.com/about-us/ (last visited July 7, 2023).

28

including Johnston and Day Rate Workers, to perform drilling services and oversee the drilling of its wells to ensure the operations are completed in accordance with Macpherson's Well Plan, Drilling Procedure, specifications, policies, and expectations.

57.     Macpherson uniformly classifies these Drilling Consultants (including Johnston and the Day Rate Workers) as independent contractors to avoid paying them overtime wages.

58.     But Macpherson does not hire these Drilling Consultants (including Johnston and the Day Rate Workers) on a project-by-project basis.

59.     Rather, Macpherson hires and treats these Drilling Consultants (including Johnston and the Day Rate Workers) just like regular employees.

60.     Despite uniformly misclassifying Johnston and the Day Rate Workers as independent contractors, Macpherson controls all meaningful aspects of these Drilling Consultants' jobs.

61.     Macpherson controls Johnston's and the Day Rate Workers' rates and methods of pay.

62.     Macpherson controls Johnston's and the Day Rate Workers' schedules and assignments.

63.     Macpherson controls Johnston's and the Day Rate Workers' work.

64.     Macpherson requires Johnston and the Day Rate Workers to follow Macpherson's policies, procedures, plans, protocols, and specifications.

65.     Johnston's and the Day Rate Workers' work must strictly adhere to the quality standards put in place by Macpherson.

66.     Indeed, upon hiring, Macpherson requires all Drilling Consultants working on its jobsites (including Johnston and the Day Rate Workers) to complete trainings on Macpherson's specific policies, procedures, and protocols to ensure their work conforms to the same.

67.     Johnston and the Day Rate Workers are not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties.

68.     Indeed, the daily and weekly activities of Johnston and the Day Rate Workers are routine and largely governed by standardized plans, procedures, and checklists created by Macpherson.

69.     Virtually every job function is predetermined by Macpherson, including the tools and

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT AND JURY DEMAND
*Johnston, et al. v. Macpherson Oil Company LLC*

equipment used at the job site, the data to compile, the schedule of work, and related work duties.

70.   Macpherson prohibits Johnston and the Day Rate Workers from varying their job duties outside of the predetermined parameters and requires Johnston and the Day Rate Workers to follow Macpherson's policies, procedures, and directives.

71.   Macpherson prohibits Johnston and Day Rate Workers from straying from Macpherson's strict procedures, plans, protocols, and specifications.

72.   Without the job performed by Johnston and the Day Rate Workers, Macpherson would not be able to complete its business objectives of oil and gas production/extraction.

73.   The work Johnston and the Day Rate Workers perform is an essential and integral part of Macpherson's core business.

74.   Johnston and the Day Rate Workers rely on Macpherson for work and compensation.

75.   Johnston and the Day Rate Workers cannot subcontract out the work they are assigned by Macpherson.

76.   Johnston and the Day Rate Workers do not substantially invest in the tools required to complete the overall job to which they were assigned.

77.   Rather, Macpherson incurred the large-scale business and operating expenses like marketing, wells, drilling equipment, tools, and materials.

78.   Johnston and the Day Rate Workers do not market their services while employed by Macpherson.

79.   Macpherson sets Johnston's and the Day Rate Workers' work schedule, which prohibits them from working other jobs for other companies while working for Macpherson.

80.   Indeed, Johnston and the Day Rate Workers are required live at or near their assigned wellsite during their hitches.

81.   At all relevant times, Macpherson has maintained control, oversight, and direction of Johnston and the Day Rate Workers, including, but not limited to, hiring, firing, disciplining, and other employment practices.

82.   In sum, as a matter of economic reality, Johnston and the Day Rate Workers are

1  Macpherson's employees.

2      83.    While exact job titles and job duties may differ, these Drilling Consultants are subjected

3  to the same or similar illegal pay practices for similar work.

4      84.    For example, Johnston worked for Macpherson as a Drilling Consultant in and around

5  Bakersfield, California from approximately March 2013 until December 2021.

6      85.    Throughout his employment, Macpherson classified Johnston as an independent

7  contractor.

8      86.    Throughout his employment, Macpherson paid Johnston on a day rate basis with no daily

9  or weekly overtime (or double time) compensation.

10      87.    Specifically, during his employment, Macpherson paid Johnston $1,200 for each day he

11  worked, regardless of the number of hours he worked that day (or that workweek) and failed to pay him

12  overtime (or double time) compensation:

13

14

15

16

17

18

19

20

21      88.    Throughout his employment, Macpherson failed to provide Johnston with compliant meal

22  and rest periods.

23      89.    Throughout his employment, Macpherson failed to pay Johnston the required one hour

24  of premium pay (at his regular rate) each day that Macpherson denied him a compliant meal and/or rest

25  period.

26      90.    Throughout his employment, Macpherson failed to provide Johnston with accurate,

27  itemized wage statements.

28

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT AND JURY DEMAND
*Johnston, et al. v. Macpherson Oil Company LLC*

91.     Johnston and the Day Rate Workers work under Macpherson's uniform independent contractor misclassification and day rate with no overtime pay scheme.

92.     As Drilling Consultants, Johnston's and the Day Rate Workers' primary responsibilities include ensuring that Macpherson's well and drilling projects are safely completed in accordance with Macpherson's Well Plan, Drilling Procedure, specifications, policies, and expectations.

93.     As Drilling Consultants, Johnston and the Day Rate Workers perform non-exempt job duties.

94.     Johnston's and the Day Rate Workers' job functions are primarily technical in nature, requiring little to no official training, much less a college education or other advanced degree.

95.     Macpherson uniformly subjects Johnston and the Day Rate Workers to policies and procedures which dictate their day-to-day activities.

96.     Macpherson prohibits Johnston and Day Rate Workers from straying from Macpherson's Well Plan, procedures, and specifications.

97.     Johnston and the Day Rate Workers do not have any supervisory or management duties.

98.     To the extent Johnston and the Day Rate Workers make "decisions," such decisions do not require the exercise of independent discretion and judgment.

99.     Instead, Johnston and the Day Rate Workers apply well-established techniques and procedures and use established standards to evaluate any issues.

100.    Johnston and the Day Rate Workers do not set the techniques and procedures utilized to perform their job duties, and these Drilling Consultants do not set quality standards.

101.    Macpherson's Drilling Consultants, including Johnston and the Day Rate Workers, are not allowed to deviate from the techniques and procedures utilized to perform their job duties or from any quality standards.

102.    With these job duties, Johnston and the Day Rate Workers are clearly non-exempt employees under the FLSA and California wage laws and, therefore, entitled to overtime (and double time) wages.

103.    But Macpherson does not pay Johnston and the Day Rate Workers overtime wages when

1    they work in excess of 40 hours in a workweek in violation of the FLSA.

2    104.    Likewise, Macpherson does not pay Johnston and the Day Rate Workers overtime wages

3    when they work in excess of 8 hours in a day and/or 40 hours in a workweek, or double time

4    compensation when they work in excess of 12 hours in a day and/or 8 hours on their seventh

5    consecutive workday in violation of California wage laws.

6    105.    Instead, Macpherson uniformly pays Johnston and the Day Rate Workers on a day rate

7    (with no overtime) basis.

8    106.    Macpherson uniformly pays Johnston and the Day Rate Workers under its illegal day rate

9    pay scheme that deprives these Drilling Consultant of overtime compensation when they work more

10   than 8 hours in a workday or 40 hours in a workweek, as well as double time compensation when they

11   work more than 12 hours in a workday or 8 hours on their seventh consecutive workday.

12   107.    Macpherson does not pay Johnston and the Day Rate Workers a guaranteed salary.

13   108.    Rather, Macpherson only pays Johnston and the Day Rate Workers their set day rates for

14   the actual days they work.

15   109.    If Johnston and the Day Rate Workers do not work, they do not get paid.

16   110.    Thus, Johnston and the Day Rate Workers are not paid on a "salary basis." *See Helix Energy*

17   *Sols. Grp., Inc. v. Hewitt*, 598 U.S. ---, 143 S. Ct. 677, 685 (2023) ("Daily-rate workers, of whatever income

18   level, are paid on a salary basis only through the test set out in § 604(b)"); *see also* 29 C.F.R. § 541.604.

19   111.    Macpherson pays Johnston and the Day Rate Workers on a day rate basis (without

20   overtime or double time).

21   112.    Johnston's and the Day Rate Workers' day rates do not increase when they work more

22   than 8 hours in a day or 40 hours in a week.

23   113.    Johnston and the Day Rate Workers do not receive overtime pay when they work more

24   than 8 hours in a day or 40 hours in a week.

25   114.    Johnston and the Day Rate Workers do not receive double time pay when they work more

26   than 12 hours in a day or 8 hours on their seventh consecutive workday.

27   115.    This is despite Johnston and the Day Rate Workers regularly working overtime (and

28

double time).

116. Johnston worked more than 8 hours in at least one workday during the 3 years before this Complaint was filed.

117. Likewise, each Day Rate Worker worked more than 8 hours in at least one workday during the 3 years before this Complaint was filed.

118. Johnston worked more than 12 hours in at least one workday during the 3 years before this Complaint was filed.

119. Likewise, each Day Rate Worker worked more than 12 hours in at least one workday during the 3 years before this Complaint was filed.

120. Johnston worked more than 8 hours on at least one seventh consecutive workday during the 3 years before this Complaint was filed.

121. Likewise, each Day Rate Worker worked more than 8 hours on at least one seventh consecutive workday during the 3 years before this Complaint was filed.

122. Johnston worked more than 40 hours in at least one workweek during the 3 years before this Complaint was filed.

123. Likewise, each Day Rate Worker worked more than 40 hours in at least one workweek during the 3 years before this Complaint was filed.

124. In fact, throughout the relevant period, Johnston and the Day Rate Workers worked 16 to 24 hours each workday for 7 days a workweek.

125. Thus, Johnston and the Day Rate Workers regularly worked far in excess of the 8-hour daily and 40-hour weekly threshold for overtime wages.

126. Likewise, Johnston and the Day Rate Workers regularly worked far in excess of the 12-hour daily threshold for double time wages.

127. But Macpherson does not pay these Drilling Consultants overtime (or double time) wages in violation of the FLSA and/or California wage laws.

128. Rather, under Macpherson's uniform day rate pay scheme, Johnston and the Day Rate Workers are denied overtime compensation when they work in excess of 8 hours in a day and/or 40

1   hours in a week in violation of the FLSA and/or California wage laws.

2   129.   Likewise, under Macpherson's uniform day rate pay scheme, Johnston and the Day Rate

3   Workers are denied double time compensation when they work in excess of 12 hours in a day and/or 8

4   hours on their seventh consecutive workday in violation of California wage laws.

5   130.   In addition to depriving Johnston and the Day Rate Workers of overtime and double time

6   wages, Macpherson also uniformly fails to provide these Drilling Consultants with compliant, off-duty,

7   *bona fide* meal and rest periods.

8   131.   Indeed, Macpherson simply assumes Johnston and the Day Rate Workers receive *bona fide*

9   meal and rest breaks each shift they work.

10   132.   But Macpherson fails to provide Johnston and the Day Rate Workers with *bona fide* meal

11   and rest periods.

12   133.   And Johnston and the Day Rate Workers do not actually receive *bona fide* meal or rest

13   periods.

14   134.   Instead, Macpherson uniformly requires Johnston and the Day Rate Workers to remain

15   on-duty and perform compensable work throughout their shifts, including during any attempted meal

16   and/or rest periods.

17   135.   Indeed, during any attempted meal or rest period, Johnston and the Day Rate Workers are

18   not free to engage in personal activities.

19   136.   Rather, during any attempted "meal break" or "rest break," Johnston and the Day Rate

20   Workers are necessarily forced to substantially perform their regular drilling consultant duties and

21   responsibilities.

22   137.   Thus, Johnston and the Day Rate Workers routinely spend their "meal breaks" and "rest

23   breaks" performing work for Macpherson's – not these Drilling Consultants' –predominant benefit.

24   138.   Despite knowing it fails to provide these Drilling Consultants with compliant meal and

25   rest periods, Macpherson also uniformly fails to pay Johnston and the Day Rate Workers the mandatory

26   one hour of premium pay (at their regular rates) for each day they are denied compliant meal and/or rest

27   periods in violation of California law.

28

139.     Further, Macpherson's common course of wage-and-hour abuses includes routinely failing to maintain true and accurate records for Johnston and the Day Rate Workers.

140.     In particular, Macpherson fails to record the hours that Johnston and the Day Rate Workers worked during their shifts due to Macpherson's illegal day rate pay scheme.

141.     Thus, Macpherson uniformly fails to provide Johnston and the Day Rate Workers with accurate, itemized wage statements that accurately reflect (1) their hours actually worked, (2) their wages actually earned, and (3) their meal and rest period premium pay in violation of California law.

142.     Finally, due to Macpherson's uniform day rate pay scheme, Macpherson uniformly fails to provide Johnston and the Day Rate Workers who have left their employment with Macpherson with full payment of all wages owed at the end of their employment in violation of California law.

143.     As these Drilling Consultants are owed unpaid overtime wages and premium wages when their employment ends, and these amounts remain unpaid under Macpherson's uniform policies and practices, Macpherson uniformly fails to pay all wages due upon termination in violation of California law.

144.     As a result, Macpherson is subject to waiting time penalties.

145.     Macpherson's violations of the FLSA and California wage laws were willful, carried out in bad faith, and caused significant damage to these Drilling Consultants.

**CLASS & COLLECTIVE ACTION ALLEGATIONS**

146.     Johnson realleges and incorporates all other paragraphs by reference.

147.     Johnston brings his FLSA claims as a collective action on behalf of himself and the FLSA Collective Members pursuant to Section 216(b) of the FLSA.

148.     Johnston brings his California labor law claims as a class action on behalf of himself and the California Class Members pursuant to FED. R. CIV. P. 23.

149.     The Day Rate Workers were victimized by Macpherson's patterns, practices, and/or policies, which are in willful violation of the FLSA and California labor laws.

150.     Other Day Rate Workers worked with Johnston and indicated they were classified and paid in the same manner, performed similar work, and were subject to Macpherson's same illegal day

1    rate pay scheme.

2        151.    Based on his experience with Macpherson, Johnston is aware Macpherson's illegal

3    practices were imposed on the Day Rate Workers.

4        152.    The Day Rate Workers are similarly situated in all relevant respects.

5        153.    The Day Rate Workers were all subject to Macpherson's illegal independent contractor

6    misclassification and day rate pay schemes, both of which deprived these Drilling Consultants of earned

7    wages, overtime wages, and double time wages.

8        154.    Even if their precise job duties and locations might vary somewhat, these differences do

9    not matter for the purposes of determining their entitlement to overtime.

10       155.    Therefore, the specific job titles or precise job locations of the various members of the

11   Putative Classes do not prevent class or collective treatment.

12       156.    Rather, the Putative Classes are held together by Macpherson's uniform day rate pay

13   scheme that systematically deprived Johnston and the Day Rate Workers of overtime and double time

14   wages.

15       157.    Macpherson's failure to pay wages (including overtime and double time wages) as required

16   by the FLSA and/or California labor laws results from generally applicable, systematic policies, and

17   practices which are not dependent on the personal circumstances of the Day Rate Workers.

18       158.    The Day Rate Workers are similarly denied overtime pay when they work more than 8

19   hours in a workday and 40 hours in a workweek.

20       159.    The Day Rate Workers are similarly denied double time pay when they work more than

21   12 hours in a workday and 8 hours on their seventh consecutive workday.

22       160.    The Day Rate Workers are similarly denied *bona fide* and compliant meal and rest periods.

23       161.    The Day Rate Workers are similarly denied their mandatory one hour of premium pay (at

24   their regular rates of pay) for each day they are denied an off-duty meal period.

25       162.    The Day Rate Workers are similarly denied accurate, itemized wage statements.

26       163.    The Day Rate Workers are similarly denied earned wages due upon their separation.

27       164.    The back wages owed to Johnston and the Day Rate Workers will be calculated using the

28

1    same records and using the same formula.

2        165.    Johnston's experiences are therefore typical of the experiences of the Day Rate Workers.

3        166.    Johnston has no interest contrary to, or in conflict with, the Day Rate Workers.

4        167.    Like each Day Rate Worker, Johnston has an interest in obtaining the unpaid wages owed

5    to them under FLSA and California labor laws.

6        168.    A class and collective action, such as the instant one, is superior to other available means

7    for fair and efficient adjudication of the lawsuit.

8        169.    Absent this class and collective action, many Day Rate Workers likely will not obtain

9    redress for their injuries, and Macpherson will reap the unjust benefits of willfully violating the FLSA

10   and California labor laws.

11       170.    Further, even if some of the Day Rate Workers could afford individual litigation against

12   Macpherson, it would be unduly burdensome to the judicial system.

13       171.    Concentrating the litigation in one forum will promote judicial economy and parity among

14   the claims of individual Day Rate Workers and provide judicial consistency.

15       172.    The questions of law and fact that are common to each member of the Putative Classes

16   predominate over any questions affecting solely the individual members.

17       173.    Among the common questions of law and fact are:

18           a.   Whether Macpherson misclassified Johnston and the Day Rate Workers as
19               independent contractors;

20           b.   Whether, as a matter of economic reality, Johnston and the Day Rate Workers were
21               Macpherson's employees;

22           c.   Whether Macpherson's day rate pay scheme applied uniformly across all Drilling
23               Consultants across the country;

24           d.   Whether Macpherson's day rate pay scheme deprived Johnston and the Day Rate
25               Workers of earned wages, overtime wages, and/or double time wages in violation of
26               the FLSA and/or California labor laws;

27           e.   Whether Macpherson failed to authorize, permit, and/or make available *bona fide* meal

28

and rest breaks to Johnston and the Day Rate Workers in violation of California labor laws;

f.  Whether Macpherson failed to pay Johnston and the Day Rate Workers the mandatory one hour of premium pay (at their regular rates) for each day they were denied an off-duty meal and/or rest break in violation of California labor laws;

g.  Whether Macpherson failed to provide Johnston and the Day Rate Workers with accurate wage statements in violation of California labor laws;

h.  Whether Macpherson failed to pay Johnston and the Day Rate Workers who left their employment all earned wages upon separation in violation of California labor laws;

i.  Whether Macpherson's violations of the FLSA and/or California labor laws resulted from a continuing course of conduct;

j.  Whether Macpherson's decision to classify Johnston and the Day Rate Workers as independent contractors was made in good faith;

k.  Whether Macpherson's decision to not pay Johnston and the Day Rate Workers overtime wages was made in good faith;

l.  Whether Macpherson's decision to not pay Johnston and the Day Rate Workers double time wages was made in good faith;

m. Whether Macpherson's decision to not provide Johnston and the Day Rate Workers with compliant meal and rest periods was made in good faith;

n.  Whether Macpherson's decision to not pay Johnston and the Day Rate Workers one hour of premium pay for each day they were denied compliant meal and/or rest periods was made in good faith;

o.  Whether Macpherson's decision to not provide Johnston and the Day Rate Workers accurate, itemized wage statements was made in good faith;

p.  Whether Macpherson's decision to not pay Johnston and the Day Rate Workers who have left their employment with all earned wages upon separation; and

q.  Whether Macpherson' violations of California labor laws were willful.

174.    Johnston and the Day Rate Workers sustained damages arising out of Macpherson's illegal and uniform employment policies.

175.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Macpherson's records, and there is no detraction from the common nucleus of liability facts.

176.    Therefore, the issue of damages does not preclude class or collective treatment.

177.    Johnston knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

178.    Macpherson is liable under the FLSA and California wage laws for failing to pay Johnston and the Day Rate Workers overtime wages.

179.    Macpherson is liable under California wage laws for failing to pay Johnston and the Day Rate Workers double time wages.

180.    Macpherson is liable under California wage laws for failing to provide *bona fide* meal and rest periods to Johnston and the Day Rate Workers.

181.    Macpherson is liable under the California wage laws for failing to pay Johnston and the Day Rate Workers the mandatory one hour of premium pay (at their regular hourly rates) for each day these Drilling Consultants were denied an off-duty meal period.

182.    Macpherson is liable under California wage laws for failing to provide Johnston and the Day Rate Workers with accurate, itemized wage statements.

183.    Macpherson is liable under California wage laws for failing to pay Johnston and the Day Rate Workers who have left their employment all their earned wages upon separation.

184.    Consistent with Macpherson's illegal day rate pay scheme, Macpherson deprived Johnston and the Day Rate Workers of overtime wages when these Drilling Consultants worked more than 8 hours in a workday and 40 hours in a workweek.

185.    Consistent with Macpherson's illegal day rate pay scheme, Macpherson deprived Johnston and the Day Rate Workers of double time wages when these Drilling Consultants worked more than 12 hours in a workday and 8 hours on their seventh consecutive workday.

186.    Consistent with Macpherson's illegal day rate pay scheme, Macpherson deprived Johnston and the Day Rate Workers of accurate, itemized wage statements.

187.    Consistent with Macpherson's illegal day rate pay scheme, Macpherson deprived Johnston and the Day Rate Workers who have left their employment with all earned wages due upon separation.

188.    As part of its regular business practices, Macpherson intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA and California labor laws with respect to Johnston and the Day Rate Workers.

189.    Macpherson's illegal day rate pay scheme deprived Johnston and the Day Rate Workers of earned wages, overtime wages, and double time wages, which they are owed under the FLSA and/or California law.

190.    There are many similarly situated Day Rate Workers who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

191.    Notice of this lawsuit should be sent to the Day Rate Workers pursuant to 29 U.S.C. § 216(b).

192.    Those similarly situated workers are known to Macpherson, are readily identifiable, and can be located through Macpherson's business and personnel records.

### MACPHERSON'S VIOLATIONS OF THE FLSA & CALIFORNIA LAW WERE WILLFUL AND/OR DONE IN RECKLESS DISREGARD FOR THE FLSA & CALIFORNIA LAW

193.    Johnston realleges and incorporates all other paragraphs by reference.

194.    Macpherson knew it controlled Johnston's and the Day Rate Workers' rates of pay.

195.    Macpherson knew it controlled Johnston's and the Day Rate Workers' method of pay.

196.    Macpherson knew it controlled Johnston's and the Day Rate Workers' schedule.

197.    Macpherson knew it controlled Johnston's and the Day Rate Workers' drilling consultant work.

198.    Macpherson knew it prohibited Johnston and the Day Rate Workers from straying from Macpherson's strict Well Plan, Drilling Procedure, and other protocols in performing their drilling consultant job duties.

199.     Macpherson knew it did not require Johnston or the Day Rate Workers to possess any specialized skillset other than that maintained by all other Drilling Consultants.

200.     Macpherson knew it did not require Johnston or the Day Rate Workers to possess any advanced degree to perform their drilling consultant work.

201.     Macpherson knew Johnston's and the Day Rate Workers' drilling consultant work was integral to Macpherson's business operations.

202.     Macpherson knew its investment in the tools and equipment necessary for Johnston and the Day Rate Workers to perform their jobs relatively outweighed that of the Drilling Consultants'.

203.     Macpherson knew it did not hire Johnston and the Day Rate Workers to work on a project-by-project basis.

204.     Macpherson knew it treated Johnston and the Day Rate Workers just like regular employees.

205.     Thus, Macpherson knew, should have known, or showed reckless disregard for the fact that, as a matter of economic reality, Johnston and the Day Rate Workers were Macpherson's employees.

206.     Nonetheless, Macpherson misclassified Johnston and the Day Rate Workers as independent contractors.

207.     Macpherson's misclassification of Johnston and the Day Rate Workers as independent contractors was neither reasonable, nor was the decision to classify these Drilling Consultants as independent contractors made in good faith.

208.     Macpherson knew it was subject to the FLSA, the California Labor Code, and applicable IWC Wage Order(s), including their respective overtime provisions.

209.     Macpherson knew the FLSA required it to pay employees, including Johnston and the Day Rate Workers, overtime wages at rates not less than 1.5 times these employees' regular rates of pay for all hours worked in excess of 40 hours in a workweek.

210.     Macpherson knew the California Labor Code and applicable IWC Wage Order(s) required it to pay employees, including Johnston and the Day Rate Workers, overtime wages at rates not less than 1.5 times these employees' regular rates of pay for all hours worked in excess of 8 hours in a workday

1   and 40 hours in a workweek.

2       211.    Macpherson knew the California Labor Code and applicable IWC Wage Order(s) required

3   it to pay employees, including Johnston and the Day Rate Workers, double time wages at rates not less

4   than 2 times these employees' regular rates of pay for all hours worked in excess of 12 hours in a workday

5   and 8 hours on the seventh consecutive workday.

6       212.    Macpherson knew Johnston and the Day Rate Workers were paid on a day rate basis

7   because Macpherson dictated and controlled the same.

8       213.    Macpherson knew Johnston and the Day Rate Workers were paid a flat amount regardless

9   of the number of hours these Drilling Consultants worked in a day or week.

10      214.    Macpherson knew it did not pay Johnston and the Day Rate Workers overtime wages

11  when they worked in excess of 40 hours in a workweek.

12      215.    Macpherson knew it did not pay Johnston and the Day Rate Workers overtime wages

13  when they worked in excess of 8 hours in a workday.

14      216.    Macpherson knew it did not pay Johnston and the Day Rate Workers double time wages

15  when they worked in excess of 12 hours in a workday.

16      217.    Macpherson knew it did not pay Johnston and the Day Rate Workers double time wages

17  when they worked in excess of 8 hours on their seventh consecutive workday.

18      218.    Macpherson knew Johnston and the Day Rate Workers worked more than 40 hours in at

19  least one workweek during the relevant statutory period because Macpherson required these Drilling

20  Consultants to do so.

21      219.    Macpherson knew Johnston and the Day Rate Workers worked more than 8 hours in at

22  least one workday during the relevant statutory period because Macpherson required these Drilling

23  Consultants to do so.

24      220.    Macpherson knew Johnston and the Day Rate Workers worked more than 12 hours in at

25  least one workday during the relevant statutory period because Macpherson required these Drilling

26  Consultants to do so.

27      221.    Macpherson knew Johnston and the Day Rate Workers worked more than 8 hours in at

28

least one of their seventh consecutive workdays during the relevant statutory period because Macpherson required these Drilling Consultants to do so.

222.   Thus, Macpherson knew, should have known, or showed reckless disregard for the fact that it failed to pay Johnston and the Day Rate Workers overtime wages in violation of the FLSA and/or California wage laws.

223.   Likewise, Macpherson knew, should have known, or showed reckless disregard for the fact that it failed to pay Johnston and the Day Rate Workers double time wages in violation of California wage laws.

224.   Macpherson knew it did not pay Johnston and the Day Rate Workers on a "salary basis."

225.   Macpherson knew it did not pay Johnston and the Day Rate Workers any minimum guaranteed salary irrespective of the number of days they worked.

226.   Macpherson knew Johnston and the Day Rate Workers primarily performed non-exempt job duties.

227.   Thus, Macpherson knew, should have known, or showed reckless disregard for the fact that Johnston and the Day Rate Workers were non-exempt employees entitled to overtime (and double time) wages.

228.   Nonetheless, Macpherson failed to pay Johnston and the Day Rate Workers overtime wages when they worked in excess of 8 hours in a workday or 40 hours in a workweek.

229.   Likewise, Macpherson failed to pay Johnston and the Day Rate Workers double time wages when they worked in excess of 12 hours in a workday or 8 hours on their seventh consecutive workday.

230.   Macpherson's failure to pay Johnston and the Day Rate Workers overtime wages was neither reasonable, nor was the decision not to pay these employees overtime wages made in good faith.

231.   Likewise, Macpherson's failure to pay Johnston and the Day Rate Workers double time wages was neither reasonable, nor was the decision not to pay these employees double time wages made in good faith.

232.   Macpherson knew the California Labor Code and applicable IWC Wage Order(s) required

1     it to authorize, permit and/or make available *bona fide* meal and rest periods to Johnston and the Day

2     Rate Workers, during which these employees are totally relieved of work duties.

3        233.    Macpherson knew they failed to provide Johnston and the Day Rate Workers with *bona*

4     *fide* meal and rest breaks.

5        234.    Macpherson knew Johnston and the Day Rate Workers did not actually receive *bona fide*

6     meal and rest breaks.

7        235.    Thus, Macpherson knew, should have known, or showed reckless disregard for the fact it

8     failed to authorize, permit and/or make available *bona fide* meal and rest periods to Johnston and the Day

9     Rate Workers in violation of the California Labor Code and applicable IWC Wage Order(s).

10        236.    Macpherson knew the California Labor Code and applicable IWC Wage Order(s) required

11     it to pay employees, including Johnston and the Day Rate Workers, one hour of premium pay (at their

12     regular hourly rates) for each day these employees are denied an off-duty meal and/or rest period.

13        237.    Macpherson knew it failed to pay Johnston and the Day Rate Workers one hour of

14     premium pay (at their regular hourly rates) for each day these employees were denied an off-duty meal

15     and/or rest period.

16        238.    Thus, Macpherson knew, should have known, or showed reckless disregard for the fact it

17     failed to pay Johnston and the Day Rate Workers one hour of premium pay (at their regular hourly rates)

18     for each day these employees were denied an off-duty meal or rest period in violation of the California

19     Labor Code and applicable IWC Wage Order(s).

20        239.    Macpherson's failure to provide Johnston and the Day Rate Workers with compliant meal

21     and rest periods was neither reasonable, nor was the decision not to provide these employees with

22     compliant meal and rest periods made in good faith.

23        240.    Likewise, Macpherson's failure to pay Johnston and the Day Rate Workers one hour of

24     premium pay for each day they were denied a compliant meal or rest period was neither reasonable, nor

25     was Macpherson's decision to not pay these employees one hour of premium pay for each day they were

26     denied a compliant meal or rest period made in good faith.

27        241.    Macpherson knew that it failed to provide Johnston and the Day Rate Workers with

28

accurate wage statements that accurately reflected their actual hours worked, wages earned, and premium pay.

242. Macpherson's failure to provide Johnston and the Day Rate Workers with accurate wage statements was neither reasonable, nor was the decision not to provide these employees with accurate wage statements made in good faith.

243. Macpherson knew that it failed to pay Johnston and the Day Rate Workers who ended their employment all their earned wages upon separation.

244. Macpherson's failure to pay Johnston and the Day Rate Workers who ended their employment all their earned wages upon separation was neither reasonable, nor was the decision not to pay these employees all their earned wages upon separation made in good faith.

245. Macpherson knowingly, willfully, and/or in reckless disregard carried out these illegal policies that deprived Johnston and the Day Rate Workers of wages, overtime wages, and/or double time wages in violation of the FLSA and/or California Labor Code and applicable IWC Wage Order(s).

246. Macpherson knowingly, willfully, and/or in reckless disregard carried out these illegal policies that deprived Johnston and the Day Rate Workers of *bona fide* meal and rest periods in violation of the California Labor Code and applicable IWC Wage Order(s).

247. Macpherson knowingly, willfully, and/or in reckless disregard carried out these illegal policies that deprived Johnston and the Day Rate Workers of the mandatory one hour of premium pay (at their regular hourly rates) for each day they are denied a bona fide meal period in violation of the California Labor Code and applicable IWC Wage Order(s).

248. Macpherson knowingly, willfully, and/or in reckless disregard carried out these illegal policies that deprived Johnston and the Day Rate Workers of accurate wage statements in violation of the California Labor Code and applicable IWC Wage Order(s).

249. Macpherson knowingly, willfully, and/or in reckless disregard carried out these illegal policies that deprived Johnston and the Day Rate Workers that ended their employment with all earned wages upon separation in violation of the California Labor Code and applicable IWC Wage Order(s).

**COUNT I**

**FAILURE TO PAY OVERTIME UNDER THE FLSA**
**PURSUANT TO 29 U.S.C. § 201, *ET SEQ.***
**(FLSA COLLECTIVE)**

250.     Johnston realleges and incorporates all other paragraphs by reference.

251.     Johnston brings his FLSA claim on behalf of himself and the FLSA Collective Members as a collective action pursuant to 29 U.S.C. § 216(b).

252.     Macpherson has violated, and is violating, Section 7 of the FLSA, 29 U.S.C. § 207, by employing non-exempt employees (Johnston and the FLSA Collective Members) in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay for their work in excess of 40 hours per week.

253.     Johnston and the FLSA Collective Members have been harmed as a direct and proximate result of Macpherson's unlawful conduct because they have been deprived of wages owed for work that they performed and from which Macpherson derived a direct and substantial benefit.

254.     Macpherson knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Johnston and the FLSA Collective Members overtime wages.

255.     Macpherson's failure to pay Johnston and the FLSA Collective Members overtime compensation was neither reasonable, nor was the decision not to pay these employees overtime compensation made in good faith.

256.     Accordingly, Johnston and the FLSA Collective Members are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their regular rates of pay for all overtime hours worked, plus liquidated damages, attorneys' fees, costs, and post-judgment interest.

<u>**COUNT II**</u>

**FAILURE TO PAY OVERTIME UNDER CALIFORNIA LAW**
**PURSUANT TO CAL. LAB. CODE § 510**
**(CALIFORNIA CLASS)**

257.     Johnston realleges and incorporates all other paragraphs by reference.

258.     Johnston brings his overtime claim under the California Labor Code and IWC Wage Order(s) as a class action on behalf of himself and the California Class Members pursuant to FED. R. CIV. P. 23.

259.    At all relevant times, Macpherson was subject to the Labor Code and applicable Wage Orders.

260.    At all relevant times, Macpherson was Johnston's and each California Class Member's "employer" within the meaning prescribed in the Labor Code.

261.    At all relevant times, Johnston and each California Class Member was Macpherson's "employee" within the meaning prescribed in the Labor Code.

262.    At all relevant times, Johnston and the California Class Members were entitled to overtime (and double time) wages under the California Labor Code and applicable IWC Wage Order(s).

263.    Section 510(a) of the California Labor Code provides:

> Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee.

264.    IWC Wage Order 5-2001(3)(A)(1), & (3) states that employees:

> …shall not be employed more than eight (8) hours in any workday or more than 40 hours in any workweek unless the employee receives one and one-half (1½) times such employee's regular rate of pay for all hours worked over 40 hours in the workweek. Eight (8) hours of labor constitutes a day's work. Employment beyond eight (8) hours in any workday or more than six (6) days in any workweek is permissible provided the employee is compensated for such overtime at not less than … [o]ne and one-half (1½) times the employee's regular rate of pay for all hours worked in excess of eight (8) hours up to and including 12 hours in any workday, and for the first eight (8) hours worked on the seventh (7th) consecutive day of work in a workweek…

265.    Section 1194(a) of the California Labor Code further provides:

> Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorneys' fees, and costs of suit.

266.    Section 1198 of the California Labor Code makes it unlawful for employers, like Macpherson, to employ employees, including Johnston and the California Class Members, under conditions that violate any applicable IWC Wage Order(s).

1    267.    Despite regularly working over 8 hours a day and 40 hours in a workweek as part of their normal and regular schedules, Johnston and the California Class Members did not receive overtime wages at rates not less than 1.5 times their regular rates of pay for all overtime hours worked.

268.    Despite regularly working over 12 hours a day and/or 8 hours on a seventh consecutive workday as part of their normal and regular schedules, Johnston and the California Class Members did not receive double time wages at rates not less than 2 times their regular rates of pay for all double time hours worked.

269.    Johnston and the California Class Members have been harmed as a direct and proximate result of Macpherson's unlawful conduct because they have been deprived of wages owed for work that they performed and from which Macpherson derived a direct and substantial benefit.

270.    Macpherson knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Johnston and the California Class Members overtime and double time wages.

271.    Macpherson's failure to pay Johnston and the California Class Members overtime and double time wages was neither reasonable, nor was the decision not to pay these employees overtime or double time wages made in good faith.

272.    Macpherson's pattern, practice, and uniform administration of corporate policy and practices regarding illegal employee compensation is unlawful and entitles Johnston and the California Class Members to recover the unpaid balance of the full amount of overtime wages owed, including 1.5 times and double time wages, an equal amount as liquidated damages, interest at the highest applicable rates, and attorneys' fees and costs.

**COUNT III**

**FAILURE TO AUTHORIZE, PERMIT, AND/OR
MAKE AVAILABLE *BONA FIDE* MEAL & REST PERIODS
PURSUANT TO CAL. LAB. CODE §§ 226.7 AND 512
(CALIFORNIA CLASS)**

273.    Johnston realleges and incorporates all other paragraphs by reference.

274.    Johnston brings his meal and rest period claim under the California Labor Code and IWC Wage Order(s) as a class action on behalf of himself and the California Class Members pursuant to FED. R. CIV. P. 23.

275.     At all relevant times, Macpherson was subject to the Labor Code and applicable Wage Orders.

276.     At all relevant times, Macpherson was Johnston's and each California Class Member's "employer" within the meaning prescribed in the Labor Code.

277.     At all relevant times, Johnston and each California Class Member was Macpherson's "employee" within the meaning prescribed in the Labor Code.

278.     At all relevant times, Johnston and the California Class Members were entitled to compliant, *bona fide* meal and rest periods under the California Labor Code and applicable IWC Wage Order(s).

279.     Sections 226.7 and 512 of the California Labor Code and applicable IWC Wage Order(s) require employers, like Macpherson, to authorize and permit meal and rest periods to their employees, including Johnston and the California Class Members.

280.     Specifically, Sections 226.7 and 512 of the California Labor Code and applicable IWC Wage Order(s) require employers, like Macpherson, to provide employees, including Johnston and the California Class Members, one uninterrupted 30-minute meal period when they work more than 5 hours per day and a second uninterrupted 30-minute meal period when they work more than 10 hours in day.

281.     Similarly, Section 226.7 of the California Labor Code and the applicable Wage Orders, also requires employers, like Macpherson, to authorize and permit employees, including Johnston and the California Class Members, to take 10 minutes of net rest time per 4 hours (or major fraction thereof) of work, and to pay employees their full wages during those rest periods.

282.     Unless employees are relieved of all duties during their 30-minute meal period(s) and 10-minute rest period(s), the employees are considered "on duty," and the meal/rest period must be counted as time worked under the applicable IWC Wage Order(s).

283.     Pursuant to Section 226.7(b) of the California Labor Code and applicable IWC Wage Order(s), employers, like Macpherson, who fail to provide an employee with a required meal and/or rest period must, as compensation, pay the employee one hour of pay at the employee's regular rate for each day that the meal and/or rest period was not authorized or permitted.

284.    At all relevant times, Macpherson routinely failed to make meal periods available to Johnston and the California Class Members.

285.    Despite long days regularly lasting in excess of 8, 12, and often 16 hours, Johnston and the California Class Members are often unable to take a meal break, are often prevented from timely taking a meal break, are otherwise subject to interruption during their meal breaks, and are frequently interrupted during their attempted meal breaks.

286.    Johnston and California Class Members are not paid one hour of premium pay for their missed meal breaks as required by California law.

287.    Similar to meal periods, at all relevant times, Macpherson regularly failed to make rest periods available to Johnston and the California Class Members.

288.    When available, if ever, Johnston's and the California Class Members' rest periods were often not compliant; rather, their rest periods were generally untimely and/or short.

289.    Johnston and the California Class Members do not receive premium pay for their missed rest periods as required by California law.

290.    Macpherson's conduct described herein violates Labor Code §§ 226.7 and 512.

291.    Johnston and the California Class Members have been harmed as a direct and proximate result of Macpherson's unlawful conduct because they have been deprived of wages owed for work that they performed and from which Macpherson derived a direct and substantial benefit.

292.    Macpherson knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to provide Johnston and the California Class Members compliant meal and rest periods and associated premium pay for missed meal and rest periods.

293.    Macpherson's failure to provide Johnston and the California Class Members with compliant meal and rest periods was neither reasonable, nor was the decision not to provide these employees with compliant meal and rest periods made in good faith.

294.    Likewise, Macpherson's failure to pay Johnston and the California Class Members premium pay for each day they were denied compliant meal and rest periods was neither reasonable, nor

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT AND JURY DEMAND
*Johnston, et al. v. Macpherson Oil Company LLC*

was the decision not to pay these employees premium pay for each day they were denied compliant meal and rest periods made in good faith.

295. Pursuant to Labor Code § 226.7(b), Johnston and the California Class Members are entitled to compensation for Macpherson's failure to authorize, permit, and/or make available meal and rest periods, plus interest, attorneys' fees, expenses and costs of suit.

<u>COUNT IV</u>

**FAILURE TO PROVIDE ACCURATE WAGE STATEMENTS**
**PURSUANT TO CAL. LAB. CODE § 226**
**(CALIFORNIA CLASS)**

296. Johnston realleges and incorporates all other paragraphs by reference.

297. Johnston brings his wage statement claim under the California Labor Code and IWC Wage Order(s) as a class action on behalf of himself and the California Class Members pursuant to FED. R. CIV. P. 23.

298. At all relevant times, Macpherson was subject to the Labor Code and applicable Wage Orders.

299. At all relevant times, Macpherson was Johnston's and each California Class Member's "employer" within the meaning prescribed in the Labor Code.

300. At all relevant times, Johnston and each California Class Member was Macpherson's "employee" within the meaning prescribed in the Labor Code.

301. Section 226(a) of the California Labor Code requires employers, like Macpherson, to provide accurate itemized wage statements to employees, including Johnston and the California Class Members, "semimonthly or at the time of each payment of wages" that accurately show:

> (1) gross wages earned, (2) total hours worked by the employee, except as provided in subdivision (j), (3) the number of piece-rate units earned and any applicable piece rate if employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number, (8) the name and address of the legal entity that is the employer, and if the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682, the name and address of the legal entity that secured the services of the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the

employee …. The deductions made from payments of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement or a record of the deductions shall be kept on file by the employer for at least three years at the place of employment or at a central location within the State of California.

302.   IWC Wage Order 5-2001(7) establishes similar wage statement requirements.

303.   Section 226(e) of the California Labor Code further provides:

An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.

304.   At all relevant times, Macpherson did not provide timely, accurate itemized wage statements to Johnston and the California Class Members in accordance with Section 226(a) of the California Labor Code and the applicable the IWC Wage Order(s) because the wage statements provided did not accurately reflect, *inter alia*, the actual hours worked, actual gross wages earned, premium pay earned, or actual net wages earned.

305.   Accordingly, Macpherson is liable to Johnston and the California Class Members for the amounts described above, with interest, as well as attorneys' fees and costs pursuant to Labor Code § 226(e).

#### COUNT V

##### WAITING TIME PENALTIES
##### PURSUANT TO CAL. LAB. CODE §§ 201-203
##### (CALIFORNIA CLASS)

306.   Johnston realleges and incorporates all other paragraphs by reference.

307.   Johnston brings his waiting time penalties claim under the California Labor Code and IWC Wage Order(s) as a class action on behalf of himself and the California Class Members who have left their employment with Macpherson pursuant to FED. R. CIV. P. 23.

308.   At all relevant times, Macpherson was subject to the Labor Code and applicable Wage Orders.

309.   At all relevant times, Macpherson was Johnston's and each California Class Member's "employer" within the meaning prescribed in the Labor Code.

310.    At all relevant times, Johnston and each California Class Member was Macpherson's "employee" within the meaning prescribed in the Labor Code.

311.    Section 201 of the California Labor Code provides: "If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately."

312.    Section 202 of the California Labor Code provides: "If an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting."

313.    Section 203 of the California Labor Code provides, in relevant part:

> If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.

314.    Johnston and certain California Class Members left their employment with Macpherson during the statutory period, at which time Macpherson owed these employees unpaid wages.

315.    These earned, but unpaid, wages derive from the unpaid overtime pay, double time pay, and premium pay owed by Macpherson.

316.    Macpherson willfully refused, and continue to refuse, to pay Johnston and certain California Class Members all wages due and owing to them, in the form of unpaid wages, overtime wages, double time wages, and premium pay, upon the end of their employment as a result of Macpherson's illegal day rate pay scheme.

317.    As a result of Macpherson's actions, Johnston and certain California Class Members have suffered, and continue to suffer, substantial losses, including lost earnings and interest.

318.    Macpherson's failure to pay Johnston and these California Class Members the wages due and owing constitute a violation of CAL. LAB. CODE §§ 201-202.

319.    As a result, Macpherson is liable to Johnston and these California Class Members for all penalties owing pursuant to California Labor Code §§ 201-203.

320.    Additionally, California Labor Code § 203 provides that an employee's wages will continue

as a penalty up to 30 days from the time the wages were due.

321.    Therefore, Johnston and these California Class Members are entitled to penalties pursuant to California Labor Code § 203, plus interest.

**COUNT VI**

**VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW
PURSUANT TO CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.*
(CALIFORNIA CLASS)**

322.    Johnston realleges and incorporates all other paragraphs by reference.

323.    Johnston brings his UCL claim as a class action on behalf of himself and the California Class Members pursuant to FED. R. CIV. P. 23.

324.    California Business and Professions Code § 17200, *et seq.*, prohibits unfair competition in the form of any unlawful, unfair, or fraudulent business acts or practices.

325.    Business and Professions Code § 17204 allows a person injured by the unfair business acts or practices to prosecute a civil action for violation of the UCL.

326.    Labor Code § 90.5(a) states it is the public policy of California to vigorously enforce minimum labor standards in order to ensure employees are not required to work under substandard and unlawful conditions, and to protect employers who comply with the law from those who attempt to gain competitive advantage at the expense of their workers by failing to comply with minimum labor standards.

327.    Beginning at an exact date unknown to Johnston, but at least during the 4 years prior to the filing of this Complaint, Macpherson committed acts of unfair competition as defined by the UCL, be engaging in the unlawful, unfair, and fraudulent business acts and practices described in this Complaint, including, but not limited to:

    a.    Violations of the FLSA;

    b.    Violations of Labor Code § 510 and IWC Wage Order 16-2001 pertaining to overtime and double time wages;

    c.    Violations of Labor Code §§ 226.7 and 512 and IWC Wage Order 16-2001 pertaining to meal and rest periods;

d.   Violations of Labor Code § 226 regarding accurate, timely itemized wage statements; and

e.   Violations of Labor Code §§ 201-203 pertaining to waiting time penalties.

328.   The violations of these federal and state laws and regulations, as well as the fundamental California public policies protecting wages, serve as unlawful predicate acts and practices for purposes of Business and Professions Code §§ 17200, *et seq.*

329.   The acts and practices described above constitute unfair, unlawful and fraudulent business practices, and unfair competition, within the meaning of Business and Professions Code §§ 17200, *et seq.*

330.   Among other things, the acts and practices have taken from Johnston and the California Class Members wages rightfully earned from them, while enabling Macpherson to gain an unfair competitive advantage over law-abiding employers and competitors.

331.   Business and Professions Code § 17203 provides that a court may make such orders or judgments as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition.

332.   Injunctive relief is necessary and appropriate to prevent Macpherson from repeating the unlawful, unfair, and fraudulent business acts and practices alleged above.

333.   As a direct and proximate result of the aforementioned acts and practices, Johnston and the California Class Members have suffered a loss of money and property, in the form of unpaid wages which are due and payable to them.

334.   Business and Professions Code § 17203 provides that the Court may restore to any person in interest any money or property which may have been acquired by means of such unfair competition.

335.   Johnston and the California Class Members are entitled to restitution pursuant to Business and Professions Code § 17203 for all wages and payments unlawfully withheld from them during the 4-year period prior to the filing of this Complaint.

336.   Johnston's success in this action will enforce important rights affecting the public interest and, in that regard, Johnston sues on behalf of himself as well as others similarly situated (the California Class Members).

337.    Johnston and the California Class Members seek and are entitled to unpaid wages, declaratory and injunctive relief, and all other equitable remedies owing to them.

338.    Johnston takes upon himself enforcement of these laws and lawful claims. There is a financial burden involved in pursuing this action, the action is seeking to vindicate a public right and it would be against the interests of justice to penalize Johnston by forcing him to pay attorneys' fees from the recovery in this action.

339.    Attorney's fees are appropriately awarded to Johnston pursuant to Code of Civil Procedure § 1021.5 and otherwise.

## RELIEF SOUGHT

340.    WHEREFORE, Johnston, individually and on behalf of the Day Rate Workers, seeks the following relief:

  a. An Order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) be sent to the Day Rate Workers allowing them to join this action by filing their written consent;

  b. An Order designating this lawsuit as a class action pursuant to FED. R. CIV. P. 23;

  c. An Order appointing Johnston and his counsel to represent the interests of the FLSA Collective and California Class;

  d. An Order pursuant to Section 16(b) of the FLSA finding Macpherson liable for unpaid back wages due to Johnston and the FLSA Collective Members, as well as for liquidated damages in an amount equal to their unpaid compensation;

  e. An Order finding Macpherson liable to Johnston and the California Class Members for their unpaid wages, overtime wages, double time wages, liquidated damages, statutory damages, and other penalties owed under the California Labor Code and applicable IWC Wage Order(s);

  f. A Declaratory Judgment that Macpherson violated the UCL as a result of the aforementioned violations of the California Labor Code and applicable IWC Wage Orders;

g. Judgment awarding Johnston and the Day Rate Workers all unpaid wages, overtime wages, double time wages, liquidated damages, statutory damages, and other penalties available under the FLSA, California Labor Code, the applicable IWC Wage Order(s), and/or the UCL;

h. An Order awarding attorney's fees, costs, and expenses;

i. Pre- and post-judgment interest at the highest applicable rates; and

j. Such other and further relief as may be necessary and appropriate.

Date: July 7, 2023                                      Respectfully submitted,

/s/ William M. Hogg
William M. Hogg
Michael A. Josephson*
Andrew W. Dunlap*
JOSEPHSON DUNLAP LLP

Richard J. (Rex) Burch*
BRUCKNER BURCH PLLC

* - *Pro hac vice* forthcoming

*Counsel for Plaintiff and the Day Rate Workers*

**<u>DEMAND FOR JURY TRIAL</u>**

Johnston hereby demands a jury trial on all claims and issues for he and the Day Rate Workers are entitled to a jury.

Date: July 7, 2023                                             Respectfully submitted,


                                                              /s/ William M. Hogg
                                                              William M. Hogg
                                                              Michael A. Josephson*
                                                              Andrew W. Dunlap*
                                                              **JOSEPHSON DUNLAP LLP**

                                                              Richard J. (Rex) Burch*
                                                              **BRUCKNER BURCH PLLC**

                                                              * - *Pro hac vice* forthcoming

                                                              *Counsel for Plaintiff and the Day Rate Workers*

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT AND JURY DEMAND
*Johnston, et al. v. Macpherson Oil Company LLC*